No. 84-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

RAYMOND P. TOCCI, BETTI J. TOCCI,
VICTOR SURDAHL and ELOISE SURDAHL,

    Plaintiffs and Appellants,

  -vs-

THE CITY OF THREE FORKS, a munici-
pal corporation,

    Defendant and Respondent.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
      In and for the County of Gallatin,
      The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

  For Appellants:

    Morrow, Sedivy & Bennett; Lyman H. Bennett, III,
    Bozeman, Montana

  For Respondent:

    Landoe, Brown Law Office, Bozeman, Montana

---

      Submitted on Briefs: March 7, 1985

          Decided: May 23, 1985

Filed: MAY 23 1985

_Ethel M. Harrison_
_____
      Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Landowners appeal a judgment of the Gallatin County District Court upholding special improvement district assessments by the City of Three Forks. The assessments were made to recapture engineering and legal expenses in creating a SID for improvements which were never completed by the City. The project was completed privately after the municipal bond failed to sell. Finding neither a statutory basis for the assessment nor a benefit to the property involved, we reverse the judgment of the District Court.

Raymond Tocci on behalf of himself and other landowners petitioned the City of Three Forks in 1977 for the creation of several special improvement districts. Acting on these requests the City Council created four SIDs in 1978. The purpose of the SIDs was to provide water and sewer services for parcels that Tocci wished to develop.

The City proceeded to contract with the engineering firm of Thomas, Dean & Hoskins to design a water and sewer system and estimate its cost for purposes of letting a construction bid and drawing up a municipal bond. This firm acted as the city engineer of Three Forks. The City undertook this work under the assumption that the SIDs would result in a bond sale and improvements.

The costs of designing and planning the project totalled $7,831.19. This amount represents engineering services, publication, title search and legal services associated with creating the four SIDs. The low bid for construction of the project was approximately $50,000. The City was unsuccessful in its attempts to sell a bond for the SIDs.

Subsequent to the unsuccessful sale the developer retained his own engineering firm to design the project and at his own cost improved the property with water and sewer facilities.

The question then arose as to which party would pay the creation costs of the abandoned SIDs. The City's engineering firm of Thomas, Dean & Hoskins filed suit against the City of Three Forks for $5,211.89 representing its consulting fee. The parties negotiated a settlement whereby the City paid $4,000 to the engineering firm.

In October 1982 the City Council voted to assess Tocci and the other property owners the costs of creating the SIDs. Following this assessment, which Tocci objected to, the plaintiffs in the present lawsuit under protest paid assessments of $7,121.94 in 1983. Shortly thereafter, Tocci and Surdahl filed the present lawsuit to recover their tax payments.

Facts reflecting our discussion above were stipulated and a nonjury trial was held June 27, 1984. The trial court concluded as a matter of law that the defendant City was properly authorized to incur the creation costs of the SIDs and to assess the same against the plaintiffs.

In a memorandum attached to the court's order of August 15, 1984, the court noted that it was the developer that started the SID process by petitioning the City for the improvements. The court stated that the developer was aware that the bond might not sell and that this party should assume the risk of nonsale. Furthermore, the court found the property owners could have used the engineering (sewer and water) plans the City had contracted for, rather than those

3

of the independent engineering firm with which Tocci had contracted:

> ". . . It would be inequitable and unjust to simply leave those financial expenditures [SID creation costs] on the CITY's back when it is the property owners and clearly not the CITY who benefit.
>
> ". . .
>
> ". . . Therefore, as a matter of equity, . . . the Court holds that the assessments made by THE CITY OF THREE FORKS are valid as against the Plaintiffs."

The property owners appeal and raise this issue:

May a city levy SID assessments against property for creation costs of anticipated improvements when those improvements are not constructed on the property by the city?

The starting and ending point for our discussion on this issue will be the plain language of the statutes that authorize assessments for special improvement districts. Section 7-12-4201, MCA, states that: "All costs and expenses incurred in the construction of any improvements specified in part 41 in any improvement district shall be paid for by special improvement district bonds or warrants. . ." The appellants have emphasized the mandatory language of this provision in their briefs before this Court. It is obvious that the City of Three Forks did not comply with the letter of this law when they compelled the developers to pay for certain creation costs of improvements rather than completing a bond sale.

The costs at issue here are clearly anticipated by the language of § 7-12-4201, MCA. That statute makes reference to costs specified in part 41 of title 7, chapter 12, MCA. Incidental expenses are defined in part 41 to be:

4

". . . the compensation of the city engineer for work done by him, the cost of printing and advertising as provided in this part and part 42, the compensation of persons appointed by the city engineer to take charge of and superintend any of the work mentioned in this part, or the expenses of making the assessment for any work authorized by this part." Section 71-2-4101(7), MCA.

We note that the contracted firm of Thomas, Dean & Hoskins was acting as the city engineer of Three Forks at the time of this project. The incidental, creation, or start-up costs are considered part of "the cost and expenses of making the improvements within such special improvement district" by the language of § 7-12-4169(1), MCA. Thus, the statutory scheme of part 41 and part 42 of chapter 12 clearly states that creation costs of an SID, incurred by the city engineer and the city generally, shall be payable by SID bonds.

The statutory language being plain and unambiguous, we refrain from reading into the language a second mode of payment for expenses other than a SID bond. It is true that the contingency presented by the facts before us is not addressed by statute. Respondent City would have us judicially read into the statutes, language to the extent that: "if the SID bond does not sell, the incidental costs of the district shall be assessed against the petitioning property owners."

To make this construction we would have to act in derogation of the general principle that a City's power to levy is strictly construed. Morse v. Kroger (1930), 87 Mont. 54, 285 P. 185. What would be particularly offensive to our common law would be the enlargement of a City's assessment power without a statutory basis. A municipality's power to tax and levy assessments warrants special consideration apart

5

from our Constitution's general mandate that powers of incorporated cities be liberally construed. Art. XI, Section 4(2), 1972 Mont. Const.

The respondent City urges this Court to accept the City's judgment as conclusive, absent proof of fraud or mistake. See, Stevens v. City of Missoula (Mont. 1983), 667 P.2d 440, 40 St.Rep. 1267. We accept this guideline, but find that here there was a clear mistake made by the City of Three Forks. The erroneous mistake was one of law when the municipality strayed outside its statutory power to assess property for improvement. The standard to which a city is held in SID procedures has been stated:

> "'. . . The statute having defined the measure of the power granted, and also the mode by which it is to be exercised, the validity of the action of the legislative body of the municipality must be determined by an answer to the inquiry whether it has departed substantially from the mode prescribed.'" Smith v. City of Bozeman (1965), 144 Mont. 528, 541, 398 P.2d 462, 469, quoting from Shapard v. City of Missoula (1914), 49 Mont. 269, 279, 141 P. 544, 547.

Here there was a substantial departure from the assessment mandate of § 7-12-4201, MCA. Lacking power to assess SID incidental expenses apart from a bond sale, the City proceeded irregardless.

This Court is not blind to the equitable appeal of apportioning the expenses of this project to the party who initiated the process and had the most to gain from its successful completion. However, the precedent of affirming such a decision would create an unnecessary burden and risk on future petitioners for SIDs. Municipalities that question the marketability of a SID bond sale have other means of insuring their incidental expenses will be paid; there is no

demonstrated need to judicially recognize an after-the-fact assessment when bonds do not sell.

A second problem in the reasoning of the lower court concerns the finding of a benefit. The theory upon which a municipality may levy assessments for special improvements is that the property will be benefited by the improvements to the extent of the burden imposed. Smith v. City of Bozeman, 144 Mont. 528, 398 P.2d 462. It is fundamental to assessments for special improvements that the assessment be in proportion to the benefits conferred by the improvement. Schumacher v. City of Bozeman (1977), 174 Mont. 519, 571 P.2d 1135.

We are unable to discern from the record what benefit the property received in this case. The trial court concluded that the developer could have used the plans prepared by the City's engineering firm. In fact the developer did not use them, but hired his own engineering firm to develop plans for construction. The mere existence of a set of plans that were suitable for use does not support a finding of a benefit.

There was testimony in the record that Mr. Tocci reviewed the City's set of specifications and plans before drawing up his own plans. Additionally, one engineer testified that he felt the property was benefited by the City first completing an acceptable design plan. However, the final plans used by Tocci were not carbon copies of the City design. Different areas were serviced by the two designs and different pipe was used. Testimony established other differences as well.

We have been unable to find any precedent in Montana or elsewhere for a finding of benefit based on the preparation

7

of engineering plans, when those plans are not used in the construction of improvements. The connection of these plans to the improvements is simply too tenuous to be affirmed as an assessable benefit.

As a final matter the City argues that the plaintiffs are estopped from questioning the validity of the assessment because of their participation in the proceedings. It cannot be seriously contended that the mere act of petitioning for a SID bars any subsequent challenge to the assessment process. The plaintiffs timely objected to the City's assessment once the City Council acted in 1982. In any case, a property owner ordinarily cannot waive or become estopped from challenging the validity of an assessment which is void by reason of an inherent defect such as lack of statutory power to assess. See Smith v. City of Bozeman, 144 Mont. 528, 398 P.2d 462.

The cause is reversed and remanded. The District Court shall order the taxes previously paid under the assessment returned to the plaintiffs with interest from July 28, 1983. The costs of the plaintiff's court proceedings shall be born by the City of Three Forks pursuant to § 7-12-4258, MCA.

Chief Justice

We concur:

Justices

8